Original

AUSA: Adam Z. Margulies

# 24 MAG 230

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KOFI AMANKWAA and<br>KOFI AMANKWAA, JR.,<br><br>Defendants. | **SEALED COMPLAINT**<br><br>Violations of<br>18 U.S.C. §§ 371, 1546, and 2<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

GEORGE W. JOHNSON, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Immigration Fraud)

1.     From at least in or about September 2016 through at least in or about November 2023, in the Southern District of New York and elsewhere, KOFI AMANKWAA and KOFI AMANKWAA, JR., the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to defraud the United States of America and an agency thereof, to wit, United States Citizenship and Immigration Services ("USCIS"), and to commit an offense against the United States, to wit, immigration fraud, in violation of Title 18, United States Code, Section 1546.

2.     It was a part and an object of the conspiracy that KOFI AMANKWAA and KOFI AMANKWAA, JR., the defendants, and others known and unknown, willfully and knowingly would and did defraud USCIS for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of USCIS in processing, reviewing, and deciding upon petitions for immigration-related relief, including petitions for self-petitioner status under the Violence Against Women Act ("VAWA"), petitions for advance parole into the United States, and petitions to become a lawful permanent resident ("LPR").

3.     It was further a part and an object of the conspiracy that KOFI AMANKWAA and KOFI AMANKWAA, JR., the defendants, and others known and unknown, knowingly would and did utter, use, attempt to use, possess, obtain, accept, and receive an immigrant and nonimmigrant visa, permit, border crossing card, alien registration receipt card, and other document prescribed by statute and regulation for entry into and as evidence of authorized stay and employment in the United States, knowing it to be forged, counterfeited, altered, and falsely made, and to have been otherwise procured by fraud and unlawfully obtained, and would and did make under oath, and as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, subscribe as true, a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and present such application, affidavit, and other document which contained such false statement and which

failed to contain a reasonable basis in law and fact, in violation of Title 18, United States Code, Section 1546(a), to wit, AMANKWAA and AMANKWAA, JR., agreed to and did participate in an immigration fraud scheme in which they attempted to and did fraudulently obtain LPR status on behalf of clients by, among other things, filing false Form I-360 VAWA Petitions.

## **Overt Acts**

4.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    In or about June or July 2019, while in the Bronx, New York, KOFI AMANKWAA, the defendant, signed under penalty of perjury a Form I-360 VAWA Petition, knowing that the petition stated, without any reasonable basis in fact, that the petitioner ("Victim-1") was abused by Victim-1's U.S. citizen child, and directed Victim-1 to sign the fraudulent Form I-360 VAWA Petition, among other immigration documents.

b.    On or about March 4, 2020, while in the Bronx, New York, AMANKWAA signed under penalty of perjury a Form I-360 VAWA Petition, knowing that the petition stated, without any reasonable basis in fact, that the petitioner ("Victim-2") was abused by Victim-2's U.S. citizen child.

c.    In or about June 2021, while in the Bronx, New York, a co-conspirator ("CC-1") of AMANKWAA and KOFI AMANKWAA, JR., the defendants, instructed Victim-2 to lie to USCIS in the event USCIS asked Victim-2 during an interview about whether Victim-2 had been abused by Victim-2's U.S. citizen child.

d.    On or about August 20, 2021, while in the Bronx, New York, AMANKWAA signed under penalty of perjury a Form I-360 VAWA Petition, knowing that the petition stated, without any reasonable basis in fact, that the petitioner ("Victim-3") was abused by Victim-3's U.S. citizen child.

e.    On or about August 20, 2021, while in the Bronx, New York, KOFI AMANKWAA, JR., the defendant, directed Victim-3 to sign under penalty of perjury a Form I-360 VAWA Petition, knowing that the petition stated, without any reasonable basis in fact, that Victim-3 was abused by Victim-3's U.S. citizen child.

f.    On or about April 26, 2022, while in the Bronx, New York, AMANKWAA signed under penalty of perjury a Form I-360 VAWA Petition, knowing that the petition stated, without any reasonable basis in fact, that the petitioner ("Victim-4") was abused by Victim-4's U.S. citizen child.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Immigration Fraud)

5.        From at least in or about September 2016 through at least in or about November 2023, in the Southern District of New York and elsewhere, KOFI AMANKWAA and KOFI AMANKWAA, JR., the defendants, and others known and unknown, knowingly uttered, used, attempted to use, possessed, obtained, accepted, and received an immigrant and nonimmigrant visa, permit, border crossing card, alien registration receipt card, and other document prescribed by statute and regulation for entry into and as evidence of authorized stay and employment in the United States, knowing it to be forged, counterfeited, altered, and falsely made, and to have been otherwise procured by fraud and unlawfully obtained, and would and did make under oath, and as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, subscribe as true, a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and presented such application, affidavit, and other document which contained such false statement and which failed to contain a reasonable basis in law and fact, to wit, AMANKWAA and AMANKWAA, JR., participated in an immigration fraud scheme in which they attempted to and did fraudulently obtain LPR status on behalf of clients by, among other things, filing false Form I-360 VAWA Petitions.

(Title 18, United States Code, Sections 1546(a) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6.        I am a Special Agent with HSI.  I have been personally involved in the investigation of this matter.   This affidavit is based upon my conversations with law enforcement and immigration personnel; my examination of, and presence during, witness and victim statements; and my examination of video and audio surveillance footage, court records, law enforcement and immigration reports and records, and documents provided by witnesses and victims.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview

7.        Based on the facts set forth below, I respectfully submit that there is probable cause to believe that, from at least in or about September 2016 through at least in or about November 2023, KOFI AMANKWAA and KOFI AMANKWAA, JR., the defendants, and others known and unknown, engaged in a scheme to fraudulently obtain LPR status on behalf of clients by, among other things, filing false Form I-360 VAWA Petitions (the "VAWA Petition Scheme").  The Form I-360 VAWA Petitions that the defendants filed, and caused to be filed, falsely stated that the petitioners, who were principally Mexican nationals residing in the United States without LPR status, were abused by their U.S. citizen children.  AMANKWAA and AMANKWAA, JR., filed, and caused to be filed, the Form I-360 VAWA Petitions knowing that the petitioners had not, in fact, been abused by their U.S. citizen children, or included allegations of abuse in the Form I-360 VAWA Petitions without asking the petitioners whether any such abuse had occurred.

8.      KOFI AMANKWAA, the defendant, is an attorney who was licensed to practice law in the State of New York from on or about March 4, 1996, until his law license was suspended on or about November 9, 2023.  At all relevant times, AMANKWAA's law office was located in the Bronx, New York (the "Law Office").    Throughout the VAWA Petition Scheme, AMANKWAA was listed as the attorney preparer of the fraudulent Form I-360 VAWA Petitions, each of which included a preparer's certification attesting, under penalty of perjury, to the truth of the petition, among other things.  AMANKWAA also met with clients and directed them to sign immigration documents necessary to the VAWA Petition Scheme, including the false Form I-360 VAWA Petitions, and, as part of the scheme, directed clients to travel abroad and re-enter the United States.

9.      KOFI AMANKWAA, JR., the defendant, and CC-1 were non-attorney employees of the Law Office who assisted KOFI AMANKWAA, the defendant, who is AMANKWA, JR.'s, father, in carrying out the scheme by, among other things, meeting with clients, directing clients to sign fraudulent Form I-360 VAWA Petitions, among other documents, and directing clients to make false statements to USCIS during interviews.

## Background

10.     Based on my training and experience as an HSI Special Agent, I know the following about the immigration forms and processes involved in the VAWA Petition Scheme:

a.      A Form I-485 LPR Petition is a petition to obtain LPR status.  An LPR petitioner is eligible for LPR status if, among other things, the LPR petitioner has "VAWA self-petitioner" status (see paragraph 10.b below), or the LPR petitioner is an immediate relative of a U.S. citizen (see paragraph 10.d below).  In general, to be eligible for LPR status, the LPR petitioner must also have been inspected and admitted, or inspected and paroled, into the United States.  That requirement, however, does not apply to an LPR petitioner applying as a VAWA self-petitioner.

b.      A Form I-360 VAWA Petition is a petition for, among other things, VAWA self-petitioner status.  An individual may obtain VAWA self-petitioner status by establishing, through the Form I-360 VAWA Petition and supporting evidence, that he or she was abused—*i.e.*, "battered or subject to extreme cruelty"—by the petitioner's U.S. citizen child, parent, or spouse. An LPR Petition may be filed concurrently with a Form I-360 VAWA Petition on which it is based.

c.      A Form I-131 Travel Petition is a petition for, among other things, permission for advance parole into the United States after temporary foreign travel.  Such permission may be obtained if the petitioner seeking to travel abroad has a pending LPR Petition and the requested travel is for "urgent humanitarian reasons" or is in furtherance of a "significant public benefit," which may include "a personal or family emergency or bona fide business reasons."

d.      A Form I-130 Petition for Alien Relative is a petition to, among other things, establish the existence of an immediate family relationship between the Form I-130 Petitioner, who is a U.S. citizen, and a noncitizen who is seeking to obtain LPR status.  An LPR Petition may be filed concurrently with a Form I-130 Petition for Alien Relative on which it is based.

e.   Unlike a Form I-485 LPR Petition that is based on VAWA self-petitioner status (*i.e.*, a Form I-360 VAWA Petition), where a Form I-485 LPR Petition is based on an immediate family relationship with a U.S. citizen (*i.e.*, a Form I-130 Petition for Alien Relative), the petitioner must establish that he or she was admitted and inspected, or admitted and paroled, into the United States.

## The VAWA Petition Scheme

11.   Based on my review of law enforcement and immigration reports and records, including records of the USCIS Fraud Detection and National Security Directorate ("FDNS"), and my conversations with law enforcement and immigration personnel, I am aware of the following:

a.   KOFI AMANKWAA, the defendant, began practicing immigration law in or about February 2001.  In or about September 2016, AMANKWAA's immigration law practice underwent a significant shift in operations.

b.   Beginning on or about September 28, 2016, AMANKWAA transitioned from filing few or no applications on behalf of Mexican nationals, to overwhelmingly filing applications on behalf of Mexican nationals.  In addition, AMANKWAA began substantially increasing the number of overall immigration applications that he filed, including, in particular, Form I-360 VAWA Petitions, Form I-131 Travel Petitions, and Form I-485 LPR Petitions.

c.   Data obtained from database searches of AMANKWAA's immigration filings, conducted on or about January 3, 2024, are depicted in the table below:

|  | February 2001 to September 28, 2016 | September 28, 2016 to Present |
|---|---|---|
| **Form I-360 VAWA Petitions** | 17 | 3,995 |
| **Form I-131 Travel Petitions** | 125 | 5,422 |
| **Form I-485 LPR Petitions** | 1,027 | 5,006 |

*Form I-360 VAWA, I-131, and I-485 immigration petitions filed by AMANKWAA. September 28, 2016 is the date that, based on USCIS FDNS records, AMANKWAA filed his first immigration application on behalf of a Mexican national.*

d.   Based on database searches of AMANKWAA's immigration filings, in or about September 2016, AMANKWAA's practices also shifted with respect to Form I-130 Petitions for Alien Relatives.  Between fiscal year 2001 and fiscal year 2016 (*i.e.*, ending September 30, 2016), AMANKWAA filed annually, on average, approximately 91 Form I-130 Petitions for Alien Relatives.  Between fiscal year 2017 and fiscal year 2023, AMANKWAA filed annually, on average, approximately 287 Form I-130 Petitions for Alien Relatives.

e.   Based on database searches of AMANKWAA's immigration filings, the vast majority of Form I-360 VAWA Petitions filed by AMANKWAA from on or about September 28, 2016, to the present were withdrawn, abandoned, or denied.  Specifically, from fiscal year 2017 (*i.e.*, beginning October 1, 2016) through fiscal year 2023, AMANKWAA filed approximately 2,346 Form I-360 VAWA Petitions that were withdrawn, abandoned, or denied, and approximately 67 Form I-360 VAWA Petitions that were approved—a withdrawn, abandoned,

or denied rate of approximately 97%. That rate is far higher than the national average for all Form I-360 VAWA Petition filers: based on database searches of immigration records, the rate of Form I-360 VAWA Petitions that were withdrawn, abandoned, or denied for all filers during the same period (*i.e.*, fiscal year 2017 through fiscal year 2023) was approximately 30%.

       f.     In addition, based on database searches of immigration records, between fiscal year 2017 and fiscal year 2023, AMANKWAA alone was responsible for nearly half—approximately 47%—of Form I-360 VAWA Petitions that were withdrawn nationwide.

     12.    Based on my review of law enforcement and immigration reports and records, including records of USCIS FDNS; my review of court records; my conversations with law enforcement and immigration personnel; and my examination of, and presence during, witness and victim statements, I am aware of the following:

       a.     The shift in filing of immigration petitions by KOFI AMANKWAA, the defendant, that began in or around September 2016, as described above, did not reflect a shift in legitimate immigration law practices, but rather was the beginning of a large-scale immigration fraud scheme that continued through at least in or about November 2023—the VAWA Petition Scheme.

       b.     AMANKWAA, with the assistance of KOFI AMANKWAA, JR., the defendant, and CC-1, among others, typically carried out the VAWA Petition Scheme through the following four steps:

         i.     *Step One*. For a particular client, AMANKWAA filed a Form I-485 LPR Petition concurrently with a Form I-360 VAWA Petition and a Form I-131 Travel Petition seeking permission for temporary foreign travel and advance parole back into the United States. The Form I-360 VAWA Petition falsely stated that the petitioner was abused by his or her U.S. citizen child, without elaboration or supporting documentation.

         ii.     *Step Two*. After approval of the Form I-131 Travel Petition, at AMANKWAA's direction, the client petitioner traveled abroad and, upon returning, was granted advance parole back into the United States.

         iii.     *Step Three*. After the petitioner was granted advance parole into the United States, AMANKWAA filed a request to withdraw the petitioner's fraudulent I-360 VAWA Petition. Upon receiving the withdrawal request, USCIS acknowledged the withdrawal of the Form I-360 VAWA Petition and denied the Form I-485 LPR Petition on which it was based.

         iv.     *Step Four*. AMANKWAA filed a second I-485 LPR Petition, this time based on a Form I-130 Petition for Alien Relative and the advance parole that the LPR petitioner had made in Step Two above. AMANKWAA filed the Form I-130 Petition for Alien Relative concurrently with the second I-485 Petition, unless the Form I-130 Petition had previously been filed and approved. The U.S. citizen listed in the Form I-130 Petition for Alien Relative as petitioning in support of the parent's LPR petition was often the same U.S. citizen child who had been falsely listed as the parent's purported abuser on the Form I-360 VAWA Petition.

c.    AMANKWAA charged each of the LPR petitioners approximately $6,000 in attorney's fees, to be paid in two installments, in addition to USCIS fees and fees for a required medical examination.

d.    In many instances, the VAWA Petition Scheme was ultimately unsuccessful because immigration authorities denied, on the basis of fraud, among other reasons, one or more of the petitions involved in the four-step process described above.

13.    Based on my examination of, and presence during, witness and victim statements, and my examination of law enforcement and immigration reports and records, and documents provided by witnesses and victims, I am aware of the following:

*Victim-1*

a.    In or about December 2018, Victim-1, a Mexican national residing in the United States without LPR status, met with KOFI AMANKWAA, the defendant, and CC-1 at the Law Office.  CC-1 served as a Spanish translator during the meeting.  AMANKWAA and CC-1 provided Victim-1 with a list of documents that Victim-1 needed to start the process of petitioning for LPR status, and informed Victim-1 that the process would cost $6,000 in attorney's fees, in addition to $1,225 in fees payable to USCIS and $325 for a required medical examination.

b.    In or about June or July 2019, AMANWKAA met with Victim-1 and filed on behalf of Victim-1, among other documents, a Form I-485 LPR Petition, a Form I-360 VAWA Petition, and a Form I-131 Travel Petition.  The Form I-360 VAWA Petition, dated June 28, 2019, falsely stated that Victim-1 had been abused by Victim-1's U.S. citizen child ("USC Child-1").

c.    The Form I-360 VAWA Petition that AMANKWAA filed on behalf of Victim-1 stated that AMANKWAA was the preparer of the petition.  The petition also included a certification stating, under penalty of perjury, that AMANKWAA had prepared the petition at the request of the petitioner, that the petitioner had reviewed the petition, and that the petitioner had informed the preparer that all of the information in the form was complete, true, and correct (the "Preparer's Certification").  Below the Preparer's Certification was the "Preparer's Signature" line, with a signature that purported to be AMANKWAA's.  Based on my review of applications that AMANKWAA submitted to the U.S. State Department on behalf of himself, and Victim-1's Form I-360 VAWA Petition, I believe that AMANKWAA's signature, in fact, appears on the Preparer's Signature line of Victim-1's Form I-360 VAWA Petition.[1]

d.    AMANWKAA's name and signature also appear on the signature line of the cover letter that enclosed the Form I-485 LPR Petition, Form I-360 VAWA Petition, and Form I-131 Travel Petition in AMANKWAA's submission to USCIS, with two sets of initials, separated by a slash mark, underneath the signature, matching the initials of AMANKWAA (in capital letters on the left side of the slash), and CC-1 (in lowercase letters on the right side of the slash).

e.    Based on interviews of Victim-1 during which I was present, Victim-1 stated that Victim-1 was never abused by USC Child-1.  USC Child-1 also stated, in my presence

---

[1] Based on my review of information contained in New Jersey Department of Motor Vehicle records, I am aware that AMANKWAA has also used a different signature.

during interviews, that USC Child-1 never abused Victim-1. Victim-1, who does not fluently speak or read English, acknowledged that it was Victim-1's signature on the signature page of the English language Form I-360 VAWA Petition, and stated that Victim-1 recalled signing immigration documents with AMANKWAA, at his direction, at the Law Office. Victim-1 stated, however, that Victim-1 was informed only that Victim-1 was applying for LPR status, and otherwise the nature and contents of the documents that Victim-1 signed were not explained to Victim-1.

       f.    Victim-1 further stated that AMANKWAA told Victim-1 to travel to Mexico and return as part of the LPR application process. On or about November 7, 2020, after traveling to Mexico, Victim-1 was paroled into the United States.

       g.    On or about May 25, 2021, AMANKWAA submitted a letter to USCIS requesting the withdrawal of Victim-1's Form I-360 VAWA Petition.

       h.    On or about May 28, 2021, AMANKWAA filed a second Form I-485 LPR Petition on behalf of Victim-1, based on Victim-1's November 7, 2020 advance parole and a Form I-130 Petition for Alien Relative that had previously been filed by USC Child-1 on behalf of Victim-1.

       i.    On or about November 30, 2022, a USCIS Immigration Services Officer interviewed Victim-1 regarding Victim-1's pending Form I-485 LPR Petition. AMANKWAA did not attend that interview, but sent a different attorney to accompany Victim-1. During the interview, the USCIS officer asked Victim-1 about the abuse statement in the withdrawn Form I-360 VAWA Petition. Victim-1 stated, in substance and in part, that Victim-1 was not aware of that statement.

       j.    On or about November 30, 2022, USCIS denied Victim-1's I-485 LPR Petition.

*Victim-2*

       k.    In or about January 2020, Victim-2, a Mexican national residing in the United States without LPR status, met with AMANKWAA at the Law Office.

       l.    On or about March 4, 2020, AMANKWAA filed on behalf of Victim-2, among other documents, a Form I-485 LPR Petition, a Form I-360 VAWA Petition, and a Form I-131 Travel Petition. The Form I-360 VAWA Petition falsely stated that Victim-2 had been abused by Victim-2's U.S. citizen child ("USC Child-2"). The Form I-360 VAWA Petition included the Preparer's Certification and Preparer's Signature (see paragraph 13.c above), which purported to be AMANKWAA's signature. Based on my review of applications that AMANKWAA submitted to the U.S. State Department on behalf of himself, and Victim-2's Form I-360 VAWA Petition, I believe that AMANKWAA's signature, in fact, appears on the Preparer's Signature line of Victim-2's Form I-360 VAWA Petition.

       m.    AMANKWAA's name and signature also appear on the signature line of the cover letter that enclosed the Form I-485 LPR Petition, Form I-360 VAWA Petition, and Form I-131 Travel Petition in AMANKWAA's submission to USCIS, with two sets of initials, separated

by a slash mark, underneath the signature, matching the initials of AMANKWAA (in capital letters on the left side of the slash), and CC-1 (in lowercase letters on the right side of the slash).

        n.     Based on interviews of Victim-2 during which I was present, Victim-2 stated that Victim-2 was never abused by USC Child-2. USC Child-2 also stated, in my presence during interviews, that USC Child-2 never abused Victim-2. Victim-2 acknowledged that it was Victim-2's signature on the signature page of the Form I-360 VAWA Petition, and stated that Victim-2 recalled signing immigration documents with a Law Office employee who was not AMANWKAA; however, Victim-2 stated that the Law Office employee did not explain to Victim-2 what Victim-2 was signing.

        o.     In or about September 2020, after traveling to Mexico, Victim-2 was paroled into the United States.

        p.     On or about April 16, 2021, AMANKWAA filed a second I-485 LPR Petition on behalf of Victim-2, concurrently with an I-130 Petition for Alien Relative for which USC Child-2 was the petitioner on Victim-2's behalf. Around the same time, AMANKWAA submitted a letter to USCIS requesting the withdrawal of Victim-2's Form I-360 VAWA Petition.

        q.     On or about June 19, 2021, USCIS sent Victim-2 a letter requesting that Victim-2 provide additional evidence to support Victim-2's LPR Petition. A few days after receiving the letter, Victim-2 went to the Law Office and overheard an individual at the Law Office mention, in substance and in part, that AMANKWAA submits immigration applications based on abuse allegations. Victim-2 asked CC-1 about what Victim-2 had overheard regarding AMANKWAA's filing of immigration applications based on abuse allegations. CC-1 told Victim-2, in substance and in part, that the abuse allegations were a white lie. CC-1 further advised Victim-2 to lie to USCIS if Victim-2 were ever asked about the abuse during an interview. Specifically, CC-1 advised Victim-2 that, if Victim-2 were asked about the abuse allegation by USCIS, Victim-2 should falsely say that Victim-2 never called the police to report the abuse because Victim-2 wanted to keep it in the family.

        r.     On or about December 20, 2021, a USCIS Immigration Services Officer interviewed Victim-2 and USC Child-2 regarding Victim-2's pending Form I-485 LPR Petition. AMANKWAA did not accompany Victim-2 to the interview. In advance of the interview, Victim-2 relayed to USC Child-2 the direction from CC-1 that, if they were asked about abuse, they should lie; USC Child-2 learned of the existence of the abuse allegation for the first time during that conversation. During the interview, the USCIS officer asked Victim-2 and USC Child-2 about their relationship and whether USC Child-2 had ever abused Victim-2. Victim-2 and USC Child-2 stated, in substance and in part, that they were close friends. Attempting to follow CC-1's direction, however, Victim-2 falsely stated, in substance and in part, that there had been abuse three years earlier, and USC Child-2 falsely stated, in substance and in part, that it was conceivable that USC Child-2 could have abused Victim-2 a few years earlier when USC Child-2 was inebriated and would not have remembered.[2]

---

[2] During my initial interview of USC Child-2, USC Child-2 initially stated falsely, in substance and in part, that USC Child-2 might have abused Victim-2 when USC Child-2 was inebriated a few years earlier. Later during that interview, USC Child-2 acknowledged that USC Child-2 never abused Victim-2.

s.    USCIS denied Victim-2's I-485 LPR Petition.

*Victim-3*

t.    In or about July 2021, Victim-3's U.S. citizen child ("USC Child-3") met with AMANKWAA at the Law Office to discuss getting immigration papers for Victim-3, a Mexican national residing in the United States without LPR status.

u.    In or about August 2021, Victim-3 and USC Child-3 met with KOFI AMANKWAA, JR., the defendant. During that meeting, AMANKWAA, JR., provided Victim-3 and USC Child-3 with a stack of immigration documents, and directed Victim-3 to sign certain pages, without advising Victim-3 or USC Child-3 of what they were signing. In fact, unbeknownst to Victim-3, who does not fluently speak or read English, Victim-3 signed an English language Form I-360 VAWA Petition falsely stating that Victim-3 had been abused by USC Child-3. The Form I-360 VAWA Petition also included the Preparer's Certification and Preparer's Signature (see paragraph 13.c above), which purported to be AMANKWAA's signature. Based on my review of applications that AMANKWAA submitted to the U.S. State Department on behalf of himself, and Victim-3's Form I-360 VAWA Petition, I believe that AMANKWAA's signature, in fact, appears on the Preparer's Signature line of Victim-3's Form I-360 VAWA Petition.

v.    AMANKWAA's name and signature also appear on the signature line of the cover letter that enclosed the Form I-485 LPR Petition, Form I-360 VAWA Petition, and Form I-131 Travel Petition in AMANKWAA's submission to USCIS, with two sets of initials, separated by a slash mark, underneath the signature, matching the initials of AMANKWAA (in capital letters on the left side of the slash), and CC-1 (in lowercase letters on the right side of the slash).

w.    Based on interviews of Victim-3 during which I was present, Victim-3 stated that Victim-3 was never abused by USC Child-3. USC Child-3 also stated, in my presence during interviews, that USC Child-3 never abused Victim-3.

x.    In or about April 2023, following the approval of an I-131 Travel Petition that was filed concurrently with the Form I-360 VAWA Petition and an I-485 LPR Petition, Victim-3 traveled to Mexico. In early May 2023, while Victim-3 was in Mexico, USC Child-3 saw a media story reporting that AMANKWAA had filed immigration documents that included false statements of domestic abuse by petitioners' children. The next morning, USC Child-3 booked a flight home for Victim-3.

*Victim-4*

y.    In or about July 2021, Victim-4, a Mexican national residing in the United States without LPR status, met with AMANKWAA at the Law Office.

z.    On or about April 26, 2022, AMANKWAA filed on behalf of Victim-4, among other documents, a Form I-485 LPR Petition, a Form I-360 VAWA Petition, and a Form I-131 Travel Petition. The Form I-360 VAWA Petition falsely stated that Victim-4 had been abused by Victim-4's U.S. citizen child ("USC Child-4"). The Form I-360 VAWA Petition also included the Preparer's Certification and Preparer's Signature (see paragraph 13.c above), which

purported to be AMANKWAA's signature.  Based on my review of applications that AMANKWAA submitted to the U.S. State Department on behalf of himself, and Victim-3's Form I-360 VAWA Petition, I believe that AMANKWAA's signature, in fact, appears on the Preparer's Signature line of Victim-4's Form I-360 VAWA Petition.

       aa.    AMANKWAA's name and signature also appear on the signature line of the cover letter that enclosed the Form I-485 LPR Petition, Form I-360 VAWA Petition, and Form I-131 Travel Petition in AMANKWAA's submission to USCIS, with two sets of initials, separated by a slash mark, underneath the signature, matching the initials of AMANKWAA (in capital letters on the left side of the slash), and CC-1 (in lowercase letters on the right side of the slash).

       bb.    Based on an interview of Victim-4 during which I was present, Victim-4 stated that Victim-4 was never abused by USC Child-4.  Victim-4 further stated that Victim-4 was not made aware of the contents of the Form I-360 VAWA Petition before it was filed.

       cc.    In or about early 2023, Victim-4 filed a Freedom of Information Act ("FOIA") request seeking the immigration documents that had been filed on Victim-4's behalf by AMANKWAA.  Upon receiving the documents, Victim-4 learned for the first time that AMANKWAA had filed the Form I-360 VAWA Petition falsely stating that Victim-4 had been abused by USC Child-4.

       dd.    On or about March 31, 2023, Victim-4 submitted a letter to USCIS explaining that Victim-4 had just learned, through Victim-4's FOIA request, that AMANKWAA had submitted the false Form I-360 VAWA Petition on Victim-4's behalf, and requested that USCIS withdraw the petition.

### *The Undercover Law Enforcement Meetings*

       14.    Based on my review of video and audio surveillance footage and law enforcement reports and records, and my conversations with law enforcement personnel, I am aware of the following:

       a.    In or around March 2023, an undercover law enforcement officer ("UC-1") met with KOFI AMANKWAA, the defendant, at the Law Office for the stated purpose of obtaining LPR status.  AMANKWAA informed UC-1 of the documents that UC-1 would need to obtain to start the LPR application process and explained the fee payments that UC-1 would be required to make.  AMANKWAA further informed UC-1 that, after obtaining the necessary documents, UC-1 would need to travel abroad and return to the United States, after which "we do the next stage, which is applying for the green card."

       b.    In or about May 2023, after obtaining the necessary documents, UC-1 returned to the Law Office and met with KOFI AMANWKAA, JR., the defendant.  During that meeting, AMANKWAA, JR., explained to UC-1 that UC-1 would be filing for "an advance parole to get legal status so [UC-1] can get [UC-1's] green card."  AMANKWAA, JR., further explained that, because UC-1 did not meet other criteria to obtain advance parole, "what Mr. Kofi"—which I believe is a reference to AMANKWAA—"wants to do is apply through the VAWA Act."  AMANKWA, JR., informed UC-1 that VAWA stands for "Violence Against Women Act."  AMANKWAA, JR., also explained to UC-1 that, under VAWA, "[i]f you are a victim of domestic

abuse, either physical or like, you know, yelling, then you request the United States government to temporarily leave the country and then come back, which would give you temporary legal status to file for residency." AMANKWAA, JR., further explained, in substance and in part, that the plan to obtain advance parole for UC-1 would involve falsely representing to immigration authorities that UC-1 was abused by UC-1's child. AMANKWAA, JR., stated, "we're trying to take advantage of a loophole to help you get your green card." AMANKWAA, JR., acknowledged that UC-1's child did not, in fact, abuse UC-1, and stated that there was a risk that UC-1's VAWA application would be denied, "because you obviously are not being abused by your [child]."[3]

### The Suspension of AMANKWAA's Law License

15.     Based on my review of court records and my conversations with law enforcement personnel, I am aware that, on or about November 9, 2023, following numerous complaints alleging that KOFI AMANKWAA, the defendant, had submitted fraudulent immigration documents containing false allegations of domestic abuse by family members, and AMANKWAA's failure to provide an adequate response to such complaints, the Supreme Court of the State of New York Appellate Division, First Judicial Department, suspended AMANKWAA's license to practice law in the State of New York.

WHEREFORE, I respectfully request that warrants be issued for the arrest of KOFI AMANKWAA and KOFI AMANKWAA, JR., the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

_George W. Johnson w/ permission_
GEORGE W. JOHNSON
Special Agent
HSI

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this _18_ day of January, 2024.

_Katharine H Parker_
_____
THE HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York

---

[3] During the meeting, AMANKWAA, JR., also stated, in substance and in part, that he wanted to make sure that UC-1 and his family were comfortable with submitting the false I-360 VAWA Petition, and that UC-1 should feel no pressure if they were not comfortable. I believe that AMANKWAA, JR.'s, open discussion of the VAWA Petition Scheme with UC-1 during the May 2023 meeting, which differed from the approach taken by the defendants previously, is likely due to the fact that, in April 2023, there was media coverage of the VAWA Petition Scheme.